BEFORE THE UNITED STATES
JUDICIAL PANEL ON MULTIDISTRICT
LITIGATION

IN RE: RECORE ANTITRUST LITIGATION

MDL DOCKET NO.

### MEMORANDUM IN SUPPORT OF MOTION FOR TRANSFER AND CONSOLIDATION OF ACTIONS PURSUANT TO 28 U.S.C § 1407

Plaintiff DPF Alternatives, LLC ("DPF Alternatives") in the action captioned *DPF Alternatives, LLC v. DET Diesel Emission Technologies*, LLC, No. 1:23-02860 (D. Colo.); Plaintiff Iron Horse Transport, LLC ("Iron Horse") in the action captioned *Iron Horse Transport, LLC dba DPF Alternatives of Roanoke v. DET Diesel Emission Technologies, LLC*, No. 7:23-00791 (W.D. Va.); Plaintiff JGD Filters, LLC ("JGD Filters") in the action captioned *JGD Filters, LLC v. DET Diesel Emission Technologies, LLC*, No. 4:24-00061 (S.D. Tex.); Plaintiff RTR DPF, LLC ("RTR") in the action captioned *RTR DPF, LLC v. DET Diesel Emission Technologies, LLC*, No. 4:24-00030 (N.D. Tex.), collectively "Movants", respectfully submit this brief in support of their motion to transfer and centralize for pretrial purposes all related actions to the Honorable Kato Crews in the United States District Court for the Colorado pursuant to 28 U.S.C. § 1407.

I.  **INTRODUCTION**

   A.  **Background on DPF Alternatives and Its Franchising Network**

DPF Alternatives is a nationwide franchise that specializes in providing diesel particulate filter ("DPF") services to the diesel industry. Compl. ¶ 18[1] Modern diesel engines use a DPF as part of its exhaust system to capture carbon particles and then intermittently burn them by using

---

[1] Facts are taken from DPF Alternative's Complaint (Dkt. 1) in *DPF Alternatives, LLC v. DET Diesel Emission Technologies*, LLC, No. 1:23-02860 (D. Colo.) (hereinafter "Compl.") unless otherwise indicated.

fuel injected into the post-combustion injection into the exhaust stream or fuel injected into the exhaust stream before the filter. *Id.* ¶ 23. This prevents carbon buildup at the expense of wasting a small quantity of fuel. *Id.* This process of active regeneration of the DPF ensures proper filtration during day-to-day operation of the engine; however, particular matter will still build up over time that requires forced regeneration or replacement of the DPF. *Id.* ¶ 24.

In particular, the DPFs installed on all diesel engines since 2007 need service by trained technicians and specialized equipment to perform forced regeneration or replacement of the DPF. Compl. ¶ 25. DPF Alternatives is well known for its ultrasonic diesel particulate filter cleaning process and warranty services of DPFs. *Id.* ¶¶ 26-27. DPF Alternatives has franchised its business offering a trade-secret ultrasonic technology, along with two patent pending pieces of equipment, to completely recover and restore diesel emissions components in diesel engines manufactured in 2007 or later. *Id.* ¶ 27.

### B. **DPF Alternatives Engages with Recore**

As part of its role as franchisor, DPF Alternatives continuously looks for business partners that could expand the offerings of DPF Alternatives' franchisees. In 2021, multiple DPF Alternatives franchisees were contacted by a representative of "Recore," purporting to offer patented equipment and a method of "re-coring" a DPF. *Id.* ¶¶ 32-34.

Generally speaking, the DPFs that DPF Alternatives' franchisees service are generally cylindrically shaped with an inner cylindrical filter also referred to as the "core" of the DPF. Compl. ¶ 29. DPF Alternatives can use its ultrasonic process to fully recover the core. *Id.* However, if the core is damaged, the unit must either be replaced or "re-cored." *Id.* The addition of service and equipment that could "re-core" the DPF would be extremely beneficial to DPF Alternatives and its franchisees. Additionally, under DPF Alternatives' franchise agreement, DPF Alternative's franchisees sought permission to engage vendor services with Recore. *Id.* ¶ 38.

Based on the representation of its patented equipment and processes, DPF Alternatives engaged with the companies purportedly offering the Recore equipment and processes: DET

Diesel Emission Technologies, LLC ("DET") and Synergy Catalyst, LLC ("Synergy") (collectively, "Recore"). DPF Alternatives does not unreasonably withhold such permission to add vendors to its approved vendors list, provided that the vendor meets DPF Alternatives' standards for approved vendors, which includes the requirements that the vendor must enhance the franchisee's and the brand's service capabilities and/or financial position, without causing the franchisee to violate the franchise agreement previously executed between DPF Alternatives and its franchisees. Compl. ¶ 39. Additionally, vendors to DPF Alternatives cannot offer products or services that compete with the DPF Alternatives' brand, nor can they interfere with the operation of the DPF Alternatives system. *Id.* ¶ 41.

Ultimately, DPF Alternatives approved Recore as an approved vendor for its Recore equipment and technology upon the following representations and agreements made by Recore in advance of the approval, including:

> the Recore equipment and process were protected by an issued U.S. Patent;
>
> the DPF Alternatives' franchisees would receive a protected territory for its use of the Recore equipment and process;
>
> DPF Alternatives' franchisees would receive access to national accounts for servicing equipment for Recore;
>
> DPF Alternatives' franchisees relationship with Recore would be that of a vendor and not a franchisee;
>
> DPF Alternatives' franchisees would be permitted to return the Recore equipment and terminate the relationship with Recore if the DPF Alternatives franchisee was not satisfied with the Recore equipment for a full refund of all amounts paid to Recore; and
>
> DPF Alternatives' franchisees would have access to qualified, professional sales assistance if the franchisee is not generating enough sales to justify the purchase. Compl. ¶ 42.

Subsequently, approximately 15 DPF Alternatives' franchisees entered into agreements with Recore, or purchased and/or leased equipment from Recore, to offer Recore's services and equipment, including Movants Iron Horse, JGD, and RTR. *See, e.g.*, *Iron Horse Transport, LLC dba DPF Alternatives of Roanoke v. DET Diesel Emission Technologies, LLC*, No. 7:23-00791 (W.D. Va.), Dkt. 1 (Complaint) (hereinafter "Iron Horse Compl.") ¶¶ 48-58; *JGD Filters, LLC v. DET Diesel Emission Technologies, LLC*, No. 4:24-00061 (S.D. Tex.), Dkt. 1 (Complaint) (hereinafter "JGD Compl.") ¶¶ 45-50; *RTR DPF, LLC v. DET Diesel Emission Technologies, LLC*, No. 4:24-00030 (N.D. Tex.), Dkt. 1 (Complaint) (hereinafter "RTR Compl.") ¶¶ 44-49.

### C. DPF Alternatives and Its Franchisees Discover Recore's Fraud

After approving the addition of Recore's product line to the DPF Alternatives vendor list, and after numerous DPF Alternatives franchisees had signed franchising agreements, purchased equipment, and/or leased equipment from Recore, Movants learned that Defendants have no issued patents, let alone any patents that covered Recore's technology or equipment. Compl. ¶ 47. Moreover, Recore made additional false representations to induce DPF Alternatives to approve Recore as a vendor that in turn induced DPF Alternatives' franchisees to enter into agreements with Recore and purchase/lease equipment from Recore. For example, after approving the franchise agreement, Movants learned that Recore refused to provide Iron Horse with an exclusive territory and reserved the right to establish additional Recore franchisees within Iron Horse's territory. *See* Iron Horse Compl. ¶ 61; JGD Compl. ¶ 53; RTR Compl. ¶ 52.

In turn, all of the representations Recore made to be an approved DPF Alternatives' vendor were false, most notably, Recore's fraudulent statements that its technology and equipment were patented. Recore's deceptive claims have led to significant damage to DPF Alternatives and violations of federal law, e.g., the Patent Act, the Lanham Act, and the Sherman Act, and of state law, e.g., tortiously interfering with DPF Alternatives' franchisees' ability to perform their franchising agreements with DPF Alternatives.

Likewise, the franchisees that opted to engage in business services with Recore soon found themselves struggling to generate the revenue they needed to sustain their businesses. This was due to several issues with Defendant including the terms of the agreements between franchisees and Recore, criticisms they received from Recore regarding DPF Alternatives, unresponsiveness of Recore to supply the franchisees with technical help, failures to provide supplies required to use the Recore's equipment, and failures to provide national accounts. Compl. ¶ 53. DPF Alternatives has lost significant revenue from its DPF Alternatives franchisees due to Defendant's direct interference between DPF Alternatives and its franchises. Additionally, several DPF Alternatives franchisees have been unable to make their franchising payments to DPF Alternatives due to threats made by Recore to siphon money to Recore instead of DPF Alternatives. Compl. ¶ 57. As a result, the franchisees have sustained their own harm from tortious interference, breach of contract, fraudulent inducement, and the same federal violations as Movants.

These false representations have caused considerable damage to Movants in the marketplace. There are now multiple similar cases filed throughout the United States by DPF Alternatives and its franchisees (Collectively, the "DPF Alternatives Cases") in multiple districts including the District of Colorado, Northern District of Texas, Southern District of Texas, and Western District of Virginia. *See* Schedule of Actions. All the DPF Alternatives Cases seek redress for the harm they incurred as a direct result of Defendants deceitful employment of false marking, unfair competition, and false statements and representations. Pursuant to 28 U.S.C. § 1407, this panel is authorized to transfer civil actions involving one or more common questions of fact to any district for coordinated or consolidated pretrial proceedings and should do so for the reasons set forth herein.

## II. LEGAL STANDARD

Centralization pursuant to Section 1407 is warranted where cases meet three requirements: (1) the cases "involv[e] one or more common questions of fact"; (2) transfer and centralization "will promote the just and efficient conduct of [the] actions"; and (3) transfer and

5

centralization will further "the convenience of parties and witnesses." See 28 U.S.C. § 1407. The objective of this centralization is to "eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary." *In re Cobra Tax Shelters Litig.*, 408 F. Supp. 2d 1348, 1349 (J.P.M.L. 2005).

III. **ARGUMENT**

    A. **This Matter Meets the Requirements for Consolidation and Transfer Under Section 1407.**

        1. **There Are Numerous Common Questions of Law and Fact.**

It is appropriate for the DPF Alternatives Cases to be consolidated into a single district as all the cases involve overlapping factual and legal issues. All the DPF Alternatives Cases include DPF Alternatives franchisees who were directly harmed due to Recore's false statements about its patent rights. This chart summarizes the claims asserted in each of the actions:

|  | DPF Alternatives | Iron Horse | JGD | RTR |
|---|---|---|---|---|
| False Marking under the Patent Act | X | X | X | X |
| Unfair Competition under the Lanham Act | X | X | X | X |
| Sherman Act § 2 | X | X | X | X |
| Tortious Interference | X | X | X | X |
| Breach of Contract |  | X | X | X |
| Fraudulent Inducement |  | X | X | X |

Certainly, the presence of the same four claims across the four actions against the same defendants clears the threshold of having common questions of fact. The factual issues pertaining to Recore's fraud in securing a market by falsely claiming it had patented technology and equipment is pervasive across all cases, including Movants' antitrust claims. Because all of the

DPF Alternatives cases involve related Plaintiffs within the same business system who were similarly targeted and harmed due to Defendant's blatant deception, the common questions of law and fact are significant enough to warrant consolidation under the first requirement.

### 2. Transfer and Consolidation Will Avoid Unnecessary Duplication of Discovery and Conserve the Resources of the Parties.

Due to the factual similarities of the DPF Alternatives Cases, centralization of cases would create a more efficient discovery process and eliminate unnecessary duplicative discovery. Consolidation is favored where there will be efficiencies in the discovery process. *See In re Primevision Health Contract Litig.*, 206 F. Supp. 2d 1369, 1370 (J.P.M.L. 2002); *In re Mirtazapine Patent Litig.*, 199 F. Supp. 2d 1380, 1381 (J.P.M.L. 2002) (centralization of cases necessary to eliminate duplicative discovery and conserve the resources of the parties, their counsel, and the judiciary). Streamlining discovery through consolidation will prevent wasting time and money inevitable through fragmented litigation in multiple venues. Movants will require the same discovery in each of the cases, particularly the evidence required to establish Recore's antitrust violations in defining the relevant market, Recore's monopoly power, and Recore's anticompetitive conduct. Movants will also require duplicative expert discovery on the same antitrust issues. This requirement strongly supports transfer and consolidation of the DPF Alternatives Cases.

### 3. Centralization Would Eliminate the Risk of Inconsistent Rulings.

Proceeding with litigation in different venues creates the possibility that various judges overseeing these cases may rule inconsistently on procedural or substantive issues. Where there is a high likelihood of inconsistent rulings on the same facts, consolidation is warranted. S*ee, e.g., In re Am. Gen. Life & Accident Ins. Co. Retiree Benefits "ERISA" Litig.*, 387 F. Supp. 2d 1361, 1363 (J.P.M.L. 2005) (consolidation ordered in part to prevent inconsistent rulings). Given the cases are in different circuits, differences in decisions are highly likely without consolidation. Aside from

concerns of fundamental fairness and consistency, different rulings will complicate and impact litigation in a significant way. Additionally, inconsistent rulings would likely set the stage for unnecessary conflict between litigants with overlapping business interests. Consolidation would allow for litigation to proceed in an orderly and consistent manner under one judge and group of counsel.  Thus, the third requirement, like the other two requirements, favors consolidation.

### 4. There are Enough Cases on File to Support Consolidation and Transfer.

The panel has regularly recognized that where, as here, there are multiple cases with overlapping classes pending in different districts, transfer and consolidation can make sense even when there are relatively few cases. *See e.g., Cardoso v. IDT Corp. (In re IDT Corp. Calling Card Terms Litig.)*, 278 F. Supp. 2d 1381 (J.P.M.L. 2003) (two cases with overlapping putative classes sufficient to warrant consolidation); I*n re Pub. Air Travel Tariff Litig.,* 360 F. Supp. 1397, 1399-400 (J.P.M.L. 1973) (five cases); *In re Morgan Stanley & Co.*, 471 F. Supp. 2d 1353 (J.P.M.L. 2006) (six cases). Given that all four cases are currently in different judicial districts, along with the high likelihood that additional "tag-along" actions could be filed based on the same conduct, the four cases from Movants that would be consolidated are more than sufficient to warrant consolidation.

### B. The Actions Should be Centralized in the District of Colorado
### 1. The First Case in the DPF Alternatives Cases was Filed in Colorado.

The Actions should be transferred to the District of Colorado, where the first-filed case (Civil Action No. 23-CV-02860-SKC) was filed. The Panel often considers the venue of the first-filed action when determining where to centralize related cases. *See In re Broiler Chicken Grower Antitrust Litig.*, 509 F. Supp. 3d 1359, 1362 (J.P.M.L. 2020) (centralizing in Oklahoma because "[t]he Oklahoma action is the first-filed action"); *In re Juul Labs, Inc., Mktg., Sales Pracs., & Prod. Liab. Litig.*, 396 F. Supp. 3d 1366, 1368 (noting pendency of first-filed case in district as

factor). This is so even where the first-filed action is not the defendant's home district as in *In re Johnson & Johnson Aerosol Sunscreen Mktg., Sales Pracs. & Prod. Liab. Litig.*, 568 F. Supp. 3d 1412, 1413 (J.P.M.L. 2021). This case should consolidate in a single district in Colorado as in *J&J Aerosol Sunscreen*.

### 2. The Parties Have Substantial Ties to Colorado.

Colorado is the only state where all parties have significant ties relevant to the claims of this matter.

***First***, Plaintiff and Franchisor DPF Alternatives is a Colorado limited liability company with its principal place of business located in Colorado. Compl. ¶ 6.

***Second***, the franchisee Movants, Iron Horse, JGD, and RTR, have engaged in business with DPF Alternatives as part of their franchising relationship.

***Third***, the nucleus of events giving rise to Movants' cases is in Colorado. Recore's representatives engaged in protracted negotiations with DPF Alternatives seeking DPF Alternatives' agreement with Recore to add the Recore products and services to DPF Alternatives' approved vendor list for DPF Alternatives' franchisees. Exhibit A, Declaration of Pedro Reyes ("Reyes Dec.") ¶¶ 7-8. These negotiations between Recore and DPF Alternatives occurred while DPF Alternatives' principals were in Colorado. Reyes Dec. ¶ 9. Recore knew, or reasonably should have been aware, that DPF Alternatives is a Colorado-based company, as such location information was included in DPF Alternatives' materials and website. Reyes Dec. ¶ 10. Additionally, Recore holds itself out as operating in Colorado with a Denver-based location listed on Recore's website. Reyes Dec. ¶ 19.

Finally, the parties' counsels have strong connections with Colorado. Recore's counsel is based out of Denver. Counsel for Movants JGD and RTR also maintain an office in Colorado. Having pre-trial proceedings in Colorado will be the most convenient for all parties.

IV. **CONCLUSION**

The DPF Alternatives Cases collectively seek to rectify the harm incurred as an immediate result of Defendants' unlawful business practices. Transfer and consolidation in the District of Colorado meets the legal standards set forth in 28 U.S.C. § 1407 as there is substantial overlap in legal and factual issues across the cases, and consolidation of the cases will avoid duplication of discovery, conserve resourses of the parties, and eliminate inconsistent pretrial rulings. Additionally, the DPF Alternatives Cases should be centralized to the District of Colorado as the first case was filed in Colorado, the franchisor DPF Alternatives is in Colorado, and the District of Colorado would be a convenient venue for all the parties involved. For these reasons, this Panel should grant the motion for transfer and consolidation, and thereby consolidate the DPF Alternatives Cases in the Central District of Colorado.

Dated: February 6, 2024     Respectfully submitted,

By: /s/Michael B. Marion
Michael B. Marion
**BYCER & MARION**
7220 N. 16th Street, Suite H
Phoenix, Arizona 85020
Tel: (602) 944-2277
michael@bycermarion.com

*Attorney for:*
*Plaintiff DPF Alternatives, LLC*
No. 1:23-02860 (D. Colo.)

*Plaintiff Iron Horse Transport, LLC*
No. 7:23-00791 (W.D. Va.)

10

By: */s/ Erik Osterrieder*

Erik Osterrieder
**KEARNEY, MCWILLIAMS & DAVIS**
55 Waugh, Suite 150
Houston, TX 77007
Tel: (713) 201-0303
eosterrieder@kmd.law

*Attorney for:*
*Plaintiff JGD Filters, LLC*
No. 4:24-00061 (S.D. Tex.)

*Plaintiff RTR DPF, LLC*
No. 4:24-00030 (N.D. Tex.)